UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
DEVONTE WALDRON

                        Plaintiff,                              Docket No.: CV-24-8315

-against-

                                                **COMPLAINT**

CITY OF NEW YORK, NEW YORK CITY
POLICE DEPARTMENT, POLICE OFFICERS
JOHN and JANE DOE 1-10 ,in their official
and individual capacities, POLICE OFFICER ORTEGA,
in his official and individual capacity, CAPTAIN
GOODCHILD, in his official and individual capacity,
and JOHN DOES 1-5, whose names are unknown to
Plaintiff, but known to the NYPD defendants,

                                                 ***JURY TRIAL DEMANDED***

                        Defendants.
------------------------------------------------------------------X

**PLAINTIFF**, DEVONTE WALDRON, by and through his attorneys, THE LAW OFFICES OF FREDERICK K. BREWINGTON, as and for his complaint against Defendants, respectfully states and alleges, upon information and belief, as follows:

**PRELIMINARY STATEMENT**

1. This is a civil action for monetary relief, including past economic loss, compensatory damages, punitive damages, disbursements, costs and fees brought under 42 U.S.C. §§ 1981, 1983, 1985 and 1986, grounded in rights secured by the First, Fourth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution, and other New York State causes of action. This action is brought against, CITY OF NEW YORK, NEW YORK CITY POLICE DEPARTMENT, and POLICE OFFICERS JOHN and JANE DOE 1-10 in their official and individual capacities. For committing acts under color of law and depriving plaintiff of rights secured by the Constitution, the

laws of the United States and the State of New York. Plaintiff alleges that defendants negligence, breach of duty, failure to intervene, and discrimination, utilized their authority to violate Plaintiff's civil and constitutional rights.

2. The defendants also conspired to condone and encourage such civil and constitutional rights violations by failing to properly investigate, punish and prevent the actions of the defendant police officers, and by maliciously discriminating against Plaintiff.

3. Such acts caused the plaintiff DEVONTE WALDRON severe personal injury to his mind, unnecessary and unwanted emotional distress, violation of civil rights, permanent damage to reputation and standing in the community, extreme mental and emotional harm and stress, and other injuries not yet fully ascertained.

## JURISDICTION AND VENUE

4. This action is brought pursuant to 42 U.S.C. §§ 1981, 1983, 1985, 1986 and the Fourteenth Amendment to the United States Constitution.

5. Jurisdiction is founded upon 28 U.S.C. §§ 1331 and 1343 (3) and (4) and the aforementioned statutory and constitutional provisions. Plaintiff further invokes the pendent jurisdiction of this Court, pursuant to 28 U.S.C. § 1367, to hear and decide any and all claims arising under state law.

6. Prior hereto, Plaintiff served a Notice of Claim in compliance with General Municipal Law § 50 et. seq. and CPLR 215 as against each municipal Defendant.

7. Venue herein is proper under 28 U.S.C. § 1391 (b); the cause of action arose in the Eastern District of New York and upon information and belief all parties reside or maintain offices in Brooklyn New York.

8. Venue is appropriate in the Eastern District of New York, as the entity defendants CITY OF NEW YORK, NEW YORK CITY POLICE DEPARTMENT and the Plaintiff DEVONTE WALDRON are located in CITY OF NEW YORK. Upon information and belief Defendant Police Officers and POLICE OFFICERS JOHN and JANE DOE 1-10, also reside and work in the Eastern District of New York and the situs of the incident giving rise to these claims occurred in the Eastern District of New York.

## PARTIES

9. DEVONTE WALDRON (hereinafter "Mr. WALDRON" or "Plaintiff") was and is a Black citizen of the United States, residing in Brooklyn, New York.

8. Defendant NEW YORK CITY POLICE DEPARTMENT (hereinafter "POLICE DEPARTMENT") was and is an agency of the CITY OF NEW YORK. Defendant CITY OF NEW YORK, is a municipality organized under and governed by the laws of the State of New York and the employer of Defendants NEW YORK CITY POLICE DEPARTMENT, POLICE OFFICERS JOHN and JANE DOE 1-10, POLICE OFFICER ORTEGA, and CAPTAIN GOODCHILD.

9. During all times herein, Defendants POLICE OFFICERS JOHN and JANE DOE 1-10 (hereinafter "Defendant Officers"), all of whose names are known to the CITY OF NEW YORK and POLICE DEPARTMENT, were police officers in the NEW YORK CITY POLICE DEPARTMENT acting in their official capacities and were employed by the CITY OF NEW YORK acting under the direction of defendants CITY OF NEW YORK and POLICE DEPARTMENT, and are sued herein individually and in their official capacities.

10. During the times relevant to this Complaint, Defendant POLICE OFFICER ORTEGA (hereinafter "Defendant Police Officer Ortega" or "Police Officer Ortega") was a police officer

employed by Defendants City of New York and New York City Police Department, acting in his official capacity under the direction of Defendants City of New York and New York City Police Department, and is sued is his official and individual capacity. Upon information and belief, Police Officer Ortega worked out of the 79th Precinct of Defendant New York City Police Department.

11. During the times relevant to this Complaint, Defendant CAPTAIN GOODCHILD (hereinafter "Defendant Captain Goodchild" or "Captain Goodchild") was in the supervisor position of Captain employed by Defendants City of New York and New York City Police Department, acting in his official capacity under the direction of Defendants City of New York and New York City Police Department, and is sued is his official and individual capacity. Upon information and belief, Captain Goodchild worked out of the 88th Precinct of Defendant New York City Police Department.

12. During all times relevant to this complaint, the NYPD defendants were acting under color of law, to wit, under color of constitution, statutes, ordinances, laws, rules, regulations, policies, customs and usages of the State of New York and/or the CITY OF NEW YORK.

13. During all times relevant to this complaint, JOHN DOES 1-5, whose names are unknown to Plaintiff, but known to the NYPD Defendants, (hereinafter " Defendant John Does 1-5") were the five (5) Hasidic Jewish men that assaulted and battered Plaintiff on October 9, 2023. Defendant John Does 1-5 wore head-coverings that resembled religious garments worn by Hasidic Jews.

14. During all times mentioned in this complaint the Defendants and each of them, separately and in concert, engaged in acts or omissions which constituted deprivation of the constitutional rights, privileges and immunities of the plaintiff and while these acts were carried out

under color of law, they had no justification or excuse in law and were instead gratuitous, illegal, improper and unrelated to any activity in which law enforcement officers may appropriately and legally engage in the course of protecting persons and property or ensuring civil order.

15. Defendants CITY OF NEW YORK, POLICE DEPARTMENT, POLICE OFFICERS JOHN and JANE DOE 1-10, Police Officer Ortega, and Captain Goodchild, at all times relevant to this action had the power and the duty to restrain Defendant John Does 1-5 and prevent them from violating the law and rights of the plaintiff but each of the NYPD defendants failed and refused to perform that duty, failed and refused to restrain the other defendants and thereby became a party to the unnecessary subjection of mental harm, emotional distress and denial of civil and constitutional rights of the plaintiff.

## FACTUAL ALLEGATIONS

16. Plaintiff, Devonte Waldron, is an African American male with mental and intellectual disabilities, which includes but is not limited to autism spectrum disorder, attention-deficit hyperactivity disorder and severe intellectual disability.

17. On October 9, 2023 at or around about 9:30 p.m., Mr. Waldron had left a party in Lafayette Gardens and was walking down Myrtle Avenue, in Brooklyn New York.

18. In the midst of Plaintiff walking home, he was approached by five (5) men, Defendant John Does 1-5, who wore head-coverings that resembled garments worn by Hasidic Jews.

19. Defendant John Does 1-5 accused and claimed that Mr. Waldron had physically assaulted another Hasidic Jewish individual.

20. Upon information and belief, Defendant John Does 1-5 were looking for a Black man who alleged assaulted another Hasidic Jewish individual.

21. Defendant John Does 1-5 abruptly grabbed Mr. Waldron and violently threw him on the ground.

22. Defendant John Does 1-5 punched and kicked Mr. Waldron, while he was on the ground defenseless.

23. Civilian witnesses personally observed and watched as Defendant John Does 1-5 ruthlessly placed their knees on Mr. Waldron's neck body with the intent to cause harm to Plaintiff.

24. The observing witnesses yelled at Defendant John Does 1-5 to stop beating Mr. Waldron.

25. Even Mr. Waldron pleaded for John Does 1-5 to stop viciously beating and assaulting him.

26. Defendant John Does 1-5 said "No", and continued the brutal, unprovoked attack.

27. Defendant John Does 1-5 continued their wrongful actions up until Defendant Police Officers arrived onto the scene.

28. Defendant John Does 1-5 remained present on the scene when Defendant Officers arrived.

29. Upon information and belief, the Hasidic Jewish man that was allegedly assaulted informed everyone that Mr. Waldron was not the individual who attacked him.

30. Mr. Waldron who was battered, brutally beaten, and injured, got up from the ground once his mother arrived on the scene.

31. Mr. Waldron was subjected to this wrongful treatment by Defendant Police Officers for no other reason but for his race and Defendants' animus towards him being Black.

32. The civilian witnesses informed Defendant Police Officers who attacked Mr.

6

Waldron, which were Defendant John Does 1-5.

33. Although witnesses not only informed but pointed out Defendant John Does 1-5 to Defendant Police Officers, Defendant Police Officers failed to request or ask Defendant John Does 1-5 for any form of identification.

34. Clearly displaying their differential treatment, Defendant Police Officers disregarded the beating Mr. Waldron suffered at the hands and feet of Defendant John Does 1-5 and instead, turned their attention to the Hasidic Jewish men who were making claims about an assault.

35. Subsequently, Defendant Police Officers intentionally failed to create a report of the incident.

36. Defendant Police Officers intentionally failed to arrest and charge Defendant John Does 1-5, even though they committed a brutal assault on Mr. Waldron.

37. Upon information and belief, Defendant Police Officers never asked for a statement from Mr. Waldron or any of the civilian witnesses at the scene of the crime.

38. Mr. Waldron was subjected to this wrongful treatment by Defendant Police Officers for no other reason but for his race and Defendants' animus towards him being Black.

39. Prior to being taken to the hospital by his family, Mr. Waldron and his family wanted and attempted to press charges against Defendant John Does 1-5 and file a complaint against the Defendant Police Officers for their egregious conduct.

40. Despite Plaintiff and his family's attempts to press charges against John Does 1-5 and make a complaint against the Defendant Police Officer, none of the violative actions by the assailants nor the officers were not taken serious by Defendant NYPD Officers at the 79th Precinct.

41. Defendant NYPD Officers at the 79th Precinct intentionally dissuaded Plaintiff and

his family from making a complaint and filing charges.

42. Defendant Police Officers at the 79th Precinct intentionally failed to allow Mr. Waldron to take or take any corrective action on their own end, against Defendant John Does 1-5 and Defendant Police officers for their misconduct.

43. Defendant Police Officer Ortega at the 79th Precinct to further undermine the physical harm, physical abuse and bodily injuries sustained by Plaintiff at the hands of five (5) men, stated to Mr. Waldron and his family, "**We can not touch them**", as in the Jewish Community.

44. In furtherance of Defendant Police Officers' failure to act, Mr. Waldron and his family received the same mistreatment from Law Enforcement at the 88th Precinct.

45. Mr. Waldron and his family went to the 88th Precinct were intentionally deterred by Defendant Police Officers from pressing charges against Defendant John Does 1-5 who assaulted him and making a complaint against the wrongful response from Defendant Police Officers, that contributed to the violations of Plaintiff's Civil and Constitutional rights.

46. Defendant Captain Goodchild of the 88th Precinct attempted to fabricate an allegation that Mr. Waldron was the wrongdoer and not a victim.

47. The actions of Defendant Captain Goodchild and those that preceded by Defendant Police Officers display that Mr. Waldron would not be mistreated in this way, but for his race and Defendants' animus toward him being Black.

48. On October 9, 2023 when Mr. Waldron was brutally beaten by Defendant John Does 1-5 and thereafter, he was the subject of discrimination, physical and mental harm, and has been denied his liberty, constitutional right of due process, and equal protection guaranteed by the Constitution of this country and the State of New York.

49. The malicious attack and assault that Mr. Waldron endured at the hands and feet of Defendant John Does 1-5 was targeted and harmed Plaintiff both physically and mentally.

50. At no point, did Mr. Waldron do anything to deserve the treatment he was subjected to by Defendant John Does 1-5.

51. Defendant Police Officers acted in concert and/or condoned the actions of Defendant John Does 1-5 committed against Mr. Waldron, which included but is not limited to: violation of law, violation of police procedures, abuse of authority, and selective enforcement.

52. Defendant Police Officers' actions and inactions were intentional, reckless, and unreasonable, as Police Officers, upon information and belief, have a duty to enforce the law on violators of the law.

53. Defendant Police Officers on October 9, 2023 and thereafter, failed to take any complaint and crime committed against Mr. Waldron serious, for no other reason than his race and Defendants' animus toward Black people.

54. Defendant Police Officers' condoned the actions of Defendant John Does 1-5 breached their duty to act in a fair and just matter, failed to make reasonable inquiry, failed to conduct a proper investigation and failed to protect Plaintiff's Civil and Constitutional rights.

## AND AS FOR A FIRST COUNT
## 42 U.S.C. § 1981 ALTERNATE LIABILITY OF DEFENDANT JOHN DOES 1-5

55. Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs 1 through 54 of this complaint with the same force and effect as though fully set forth herein.

56. Defendant John Does 1-5 are directly liable for the constitutional violations that Mr. Waldron, endured as a result of their actions. Defendant John Does 1-5 racially discriminated,

attacked, targeted, and brutalized Plaintiff as he was walking down the streets of Brooklyn, New York.

57. Defendant John Does 1-5 commenced to beating Mr. Waldron, a Black man, for no reason, violating plaintiff's right of free will to walk down the streets without being physically attacked, harassed, or subjected to a racial assault.

58. Defendant John Does 1-5 continued to beat Mr. Waldron as he laid on the ground, defenseless, and begged for the ruthless assailants to stop their physical abuse.

59. Under 42 U.S.C. § 1981, it provides that "All persons within the jurisdiction of the United States shall have the same right in every State...to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens." This law protects "against impairment by nongovernmental discrimination and impairment under color of State law."

60. Mr. Waldron's Constitutional and Civil rights were violated by Defendant John Does 1-5 as he was targeted solely for being a Black man, and wantonly beat and injured by Defendants.

61. Mr. Waldron's constitutional rights as a Black citizen are no different than if he was a white citizen. The discriminatory assault suffered by Mr. Waldron at the hands and feet of Defendant John Does 1-5 was condoned by Defendant Police Officers, which was demonstrated by their racially targeting actions and inactions.

62. As a direct and proximate result of the aforesaid acts of Defendant John Does 1-5, Mr. Waldron suffered and suffers physical assault, mental anguish and violation of rights from then until now and he will continue to so suffer in the future having been mentally injured, as a result of the foregoing acts of the defendants.

63. That by reason of the foregoing, plaintiff was discriminated against by Defendant John Does 1-5, physically assaulted, battered, mentally abused, exposed to disgrace, public humiliation, and embarrassment and has been damaged in the sum of Two Million ($2,000,000.00) Dollars.

**AND AS FOR A SECOND COUNT**
**42 U.S.C. § 1983 MUNICIPAL LIABILITY AGAINST MUNICIPAL DEFENDANTS**

64. The plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs 1 through 63 of this complaint with the same force and effect as though fully set forth herein.

65. Prior to October 9, 2023 and since, Defendant CITY OF NEW YORK has permitted, allowed, and tolerated a pattern and practice of unjustified, unreasonable, and illegal abuses against Black persons by police officers of Defendant CITY OF NEW YORK.

66. Although such actions by NYPD officers were improper, Defendant NYPD Officers involved here, and in general, were not seriously prosecuted, disciplined, or admonished to not engage in such discriminatory actions that disproportionately affect Black people.

67. Instead of protecting the constitutional rights of Black citizens as white citizens, Defendant NYPD Officers sought to either cover-up, blame the victim, and/or intentionally fail to make police reports or turn a blind eye to particular crimes and offenses committed against Black people.

68. As a result, Defendants CITY OF NEW YORK and New York City Police Department encouraged and created a heinous culture that Defendant Police Officers, relied upon here, which is and was, to believe that minorities, and more specifically Black persons, could be and should be mistreated under circumstances where abuse of power is excessively utilized and that such

behavior would in fact be permitted by the Defendant CITY OF NEW YORK.

69. As a result, Defendant Police Officers were wrongfully within their jurisdiction and encouraged to believe that civilian persons could be abused under these circumstances, which includes but is not limited to: failing to arrest white individuals who committed a crime against a young Black man, failing to create of a police report of a civilian assault, discouraging victims from pressing charges and filing complaints as a result of a civilian assault committed by white individuals. These wrongful actions are active and currently being permitted by Defendant CITY OF NEW YORK.

70. Not only were the wrongful actions displayed by Defendant NYPD Officers at the scene of the crime on October 9, 2023, it was further displayed by the actions and inactions of Defendant Police Officer Ortega and Defendant Captain Goodchild, at the 79th and 88th Precincts, respectively.

71. As a consequence of Defendants' wrongful actions, intentional, negligent and violations of state and federal laws, Plaintiff was deprived of his bodily integrity, free will to be protected by the laws of New York City, New York State, and the United States of America, was made to suffer not only physical assault and battery but in addition to that public humiliation, and was subjected to great fear and terror, personal humiliation, mental and emotional distress as a result of the aforesaid unlawful conduct, both racially discriminatory inaction and actions of the Defendants.

72. That by reason of the foregoing, plaintiff has been physically assaulted, battered, mentally abused, exposed to disgrace, public humiliation, and embarrassment and has been damaged in the sum of Two Million ($2,000,000.00) Dollars.

## AND AS FOR A THIRD COUNT
## 42 U.S.C. § 1981, 1983, 1985, 1986 AGAINST All Defendants

73. The plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs 1 through 72 of this complaint with the same force and effect as though fully set forth herein.

74. Defendant John Does 1-5, accusation and allegation against Mr. Waldron was false, malicious, negligent, reckless, intentional and wrongful and was intended to cause plaintiff emotional distress and to physically harm plaintiff, for no other reason than his race.

75. All Defendants, expressly and impliedly, agreed with each other to bring about plaintiff's false accusation, emotional distress, mental anguish and physical abuse all without lawful or proper basis or justification on account of his race and color. All without consideration of plaintiff's rights and in violation of civil and constitutional rights of the plaintiff.

76. All Defendants, expressly and impliedly, agreed with each other to let Defendant John Does 1-5 go unpunished for the racial crimes they committed against Mr. Waldron. Additionally, the NYPD Defendants with knowledge of the crimes by Defendant John Does 1-5, intentionally discouraged Mr. Waldron from pursuing charges and filing a complaint against Defendant Police Officers on scene for the October 9, 2023 brutal attack and assault.

77. All of the wrongful actions and inaction by Defendants above were in violation of the laws of the State of New York and plaintiff's civil rights were disregarded and ignored by the actions of defendants and that the same were a clear and intentional abuse of process causing plaintiff damages. All of these rights are secured to plaintiff by the provisions of the Constitution of the United States and by 42 U.S.C. § 1981, 1983, 1985, 1986.

78. That by reason of the foregoing, plaintiff has been physically assaulted, battered, mentally abused, exposed to disgrace, public humiliation, and embarrassment and has been damaged in the sum of Two Million ($2,000,000.00) Dollars.

**AND AS FOR A FOURTH COUNT**
**PUNITIVE DAMAGES AS AGAINST ALL DEFENDANTS**

79. The Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in paragraphs 1 through 78 of this complaint with the same force and effect as though fully set forth herein.

80. All Defendants acted outrageously for their above-stated roles in the intentional abuses of Mr. Waldron .

81. Said harms committed by Defendant John Does 1-5 against Mr. Waldron were known to and exacerbated by Defendants CITY OF NEW YORK, POLICE DEPARTMENT, POLICE OFFICERS JOHN and JANE DOE 1-10 ,in their official and individual capacities, POLICE OFFICER ORTEGA, and CAPTAIN GOODCHILD for no legal or legitimate basis other than to discriminatorily harm, Mr. Waldron, a Black man.

82. Said actions of the DEFENDANT OFFICERS were even more outrageous, callous, malicious, and dangerous to the well-being of said Plaintiff, as Defendant Officers are cloaked with the power of the State but instead use such as a miscarriage of justice.

83. The Defendants knew that their conduct would cause severe and extreme harm to Plaintiff.

84. The acts of all defendants complained of herein were willful, wanton, malicious and oppressive. They acted with callous disregard, recklessness and deliberate indifference towards the

rights of the Mr. Waldron and without concern for the damage they would cause.

85. Defendants' actions were motivated by racial animus and a desire to harm plaintiff without regard for plaintiff's well-being and were based on a lack of concern and ill will towards plaintiff. Such acts therefore deserves an award of Twenty Million ($20,000,000.00) Dollars as punitive damages.

**WHEREFORE,** plaintiff demands judgment against defendants:

a. On the First Cause of Action in the sum of Two Million ($2,000,000.00) Dollars;

b. On the Second Cause of Action in the sum of Two Million ($2,000,000.00) Dollars;

c. On the Third Cause of Action in the sum of Two Million ($2,000,000.00) Dollars;

d. On the Fourth Cause of Action in the sum of Twenty Million ($20,000,000.00) Dollars;

e. Award attorney's fees and costs of this action to the Plaintiff pursuant to 42 U.S.C.§ 1988;

f. Declaratory Judgment that defendants wilfully violated plaintiff's rights secured by federal and state law as alleged herein;

g. Injunctive relief, requiring defendants to correct all past violations of federal and state law as alleged herein; to enjoin defendants from continuing to violate federal and state law as alleged herein; and to order such other injunctive relief as may be appropriate to prevent any future violations of said federal and state laws; and;

h. Award such other and further relief as this Court may deem appropriate.

### ***JURY TRIAL IS HEREBY DEMANDED***

Dated: Hempstead, New York
December 3, 2024

                                            Respectfully submitted,

                                            THE LAW OFFICES OF
                                            FREDERICK K. BREWINGTON

BY:    */s/Frederick K. Brewington*
           FREDERICK K. BREWINGTON
           *Attorneys for Plaintiff*
           556 Peninsula Blvd.
           Hempstead, New York 11550
           (516) 489-6959